## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NOS. 1:CR-10-183 |
| | ) | and 1:CR-11-003 |
| v. | ) | (Judge Rambo) |
| | ) | |
| DAVID RICHARD DODD, II | ) | |
| | ) | ELECTRONICALLY FILED |

### BRIEF OF THE DEFENDANT, DAVID RICHARD DODD, IN SUPPORT OF DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OPPOSITION OF AN ORDER OF RESTITUTION

I.  **SUMMARY OF ARGUMENT**

This case is before this Court, in part, as the result of the government and

Mr. Dodd not reaching an agreement pursuant to the Mandatory Victim

Restitution Act of 1996 ("MVRA") both as to who were "victims" and what "loss"

those victims incurred as a result of his criminal conduct.  In order to avoid an

impasse, the Plea Agreement did not identify any victim or any loss for MVRA

purposes but, instead, provided if either the amount of the loss involved or

restitution owed by Dodd, or both, could not be agreed upon prior to sentencing,

then the government would have to prove both issues at an appropriate hearing

before this Court.

This hearing is limited to the issues of "loss" and "restitution" under the

MVRA and by implication the issue of the identification of victims as there can be

1

no loss under the MVRA without a loss of property or physical injury to a "victim." In this case, under the MVRA, loss is solely related to the loss of property.

It is Mr. Dodd's position pursuant to the MVRA the government has not proven the contractors to be either "victims" or have suffered a loss of property. Further, the claims of loss of property by the contractors, Metro Bank, the City, and County are not direct and proximate but, instead, tangential, to the offenses to which he pleaded guilty or his overall conduct. The evidence supports a finding the contractors' claims were incurred due to their failure to perform their Work in compliance with the terms of the construction contract, their filing of mechanic's liens despite their written recognition that the project was public in nature and properly exempted by the Mechanic's Lien Law, acts and actions of other contractors beyond Mr. Dodd's control; the misdirection of government administrators, and the contractors' own failure to promptly comply with and provide certifications that steel used in their Work complied with the Buy America Act and Steel Procurement Act.

If the contractors' Work was not in compliance with all aspects of the Construction Contract, their right to be paid never ripened into fruition and they have no valid claim to the property they allege they lost. If the contractors' loss

was due to their own actions or actions of others, it cannot be said the loss cause for their was the direct and proximate result of Dodd's conduct.

The issues of the rights of the contractors to be paid, whether the contractors breached the terms of the Construction Contract, and the right of the owner to withhold payment under the terms of the Construction Contract are complex and technical. It was never Congress' intent that highly complex issues related to the cause or amount of a victim's loss be resolved under the MVRA. Congress in passing MVRA never wanted or envisioned sentencing in a criminal matter to become a forum for determination of issues better suited to civil proceedings. In fact, at least two courts in this case, the United States Bankruptcy Court and the Court of Common Pleas of Dauphin County, have the same issues before them and are better suited to resolve the issues the hearings in this matter have uncovered.

The Third Circuit Court of Appeal has interpreted the MVRA to require that persons seeking restitution must establish the "loss" is not so attenuated from a defendant's criminal act or conduct that the "loss" cannot be related to it. In other words, the defendant's criminal conduct must be a substantial factor in bringing about a person's loss. The "proximate" cause aspect contained in the MVRA is not premised upon an absolute "but for" test but is a test that is circumscribed by the criminal conduct, facts and time. A witness' loss must be connected with the

specific criminal act or conduct, and such conduct must be a substantial factor not be too far removed either factually or temporally from the loss, or caused by another factor.

Additionally, none of the alleged victims are "victims" by definition under the MVRA or suffered "losses" under the MVRA as that term has been interpreted by the Third Circuit Court of Appeals and other circuit courts. The government has not proven that any of the contractors, Metro Bank, and state and local governments are "victims" as defined by the MVRA. The government failed to produce any evidence that the "victims" lost any property or lost any property directly and proximately as the result of the crimes to which Mr. Dodd pleaded guilty or as a result of his criminal conduct.

The government failed to produce evidence that Mr. Dodd's specific criminal conduct or other conduct was the direct and proximate cause for the contractor's losses. Instead, the government argues that the contractors, Metro Bank, and the local agencies would not have suffered losses "but for" Mr. Dodd's capitalization of IDC with legitimate commercial loan draws CRE took from Metro Bank and lent to IDC. The government basis this argument upon the fact that CRE because of the loans made by CRE to IDC, IDC was always in a position of having insufficient funds to pay the contractors. There is, however, no

evidence cited by the government in the record to support this contention. This conclusion is also rebutted by the government's own observation that on April 22, 2008, CRE's checking account balance equaled $1,083,094.24. (U.S. Brief, p. 22.) Moreover, any loan made by CRE to IDC had been paid in full to CRE by April 2007, well before any progress payments were to be made in April 2008.

The government's position is the classic statement of the runaway "but for" argument which has been rejected by the Third Circuit to support a claim for a "loss" under the MVRA. The government fails to acknowledge that Dodd presented evidence to rebut the government's "but for" argument to which rebuttal the government never responded (i.e., City and County Section 108 funds were not used to pay for anything other than eligible expenses or HUD regulations do not require mirror payment of contractors' payment applications) The government also ignores the terms of the Construction Contract; the contractors' breaches of the contract; the contractors' filing of mechanic's liens; and the contractors' actions in bringing about their own loss.

In relation to Metro Bank and the Dauphin County and City of Harrisburg losses, the government has failed to relate their loss to a specific offense or Mr. Dodd's criminal conduct. The government is not claiming Mr. Dodd used the borrowed funds to pay for _ineligible_ expenses or to pay for costs unrelated to the

construction project. (Connor, N.T. 122, l. 13-19.)  The loss of Metro Bank, Dauphin County, and the City of Harrisburg is related to the project not being completed.  The money those entities lent to Dodd is invested in the physical structure which was about eighty percent (80%) complete.  (Defendant's Exhibit 85, Job Conference Report, dated 5/06/08.)  The government did not prove a connection between Metro Bank, County of Dauphin, and City of Harrisburg's alleged loss and IDC performance of its contract or any other conduct carried out by Mr. Dodd.

Mr. Dodd introduced objective demonstrative evidence that the City of Harrisburg, HUD's contract administrator, advised him not to pay contractors who had failed to comply with the Buy America Act provisions of the Construction Contract and a Labor and Industry consultant who advised him that it was his prerogative as an Owner not to pay contractors if they were not in compliance with the Davis-Bacon Act.  The Project collapsed because contractors who claimed they were not rightfully being paid at a time when, under the terms of the Construction Contract, they did not have a right to be paid.  The losses of lenders were caused not as a result of any criminal conduct but, instead, as the result of a contract dispute.

Finally, the type of losses claimed by a number of the "victims" are not type

recognized as a loss under the MVRA. Examples of the types of losses not recognized by the MVRA are the contractors' lost profit, claims for attorneys fees, claims for work not approved or performed, and claims for amortized cost of total loan, as they are classified as incidental or consequential losses not recognized by the MVRA for restitution. Further, any claims made by Metro Bank or the governmental agencies would represent a double recovery in the event this Court orders restitution for the contractors' claim as it is undisputed, all of the monies lent by the bank and those agencies were used to pay eligible expenses incorporated into the structure and not placed into Mr. Dodd's controlled bank accounts or other projects.

II. **ARGUMENT**

A. **Extent and Scope of Plea Agreement**

The Plea Agreement executed in this matter specifically acknowledges the provisions of the Mandatory Victims Restitution Act of 1996 ("MVRA"). The Plea Agreement provides Defendant's conduct includes conduct underlying the charges of conviction as well as all other charges dismissed as part of the Plea Agreement. The Plea Agreement states that restitution could be ordered to persons other than "victims" of the specific offense of conviction. However, the Plea Agreement conditioned and qualified such relief. The Plea Agreement states

7

if the Defendant and the United States cannot reach an agreement either to (1) amount of loss involved; or (2) the amount of restitution owed by the Defendant or both then the United States would be required to prove the amount of the loss involved and the amount of restitution owed at an appropriate hearing before the district court. (¶10A of the Plea Agreement.)

The terms of the Plea Agreement do not specifically identify any "victim;" the amount of any "loss"; or any amount of restitution to be paid to a "victim."

The Plea Agreement also does not express an understanding that Mr. Dodd agreed that any of the contractors, Metro Bank, or local agencies were "victims" or suffered any "loss" as a result of his criminal act or conduct. References in the Plea Agreement to Defendant making full restitution in accordance with a schedule to be determined by the Court is not an expression of Mr. Dodd's agreement that there was a "loss" or he owed restitution to a "victim" or other persons. The provision only related to those individuals whom Defendant and the United States agree upon being a "victim" pursuant to the MVRA and as to the amount of those "victims'" property loss.

Plea agreements are in effect contracts, the result of bilateral bargaining, and are to be interpreted under principles of contract law. See, <u>United States v. Williams</u>, 102 F. 3d 923, 926-927 (7th Cir. 1996). Like any other contract, there

8

must be a meeting of minds on all essential terms in order for a plea agreement to be valid. United States v. Rundle, 324 F. 3d 550 (7th Cir. 2003) citing United States v. Barnes, 83 F. 3d 394, 978 (7th Cir. 1996).

The meaning of the Plea Agreement is unambiguous. In the event the United States and the Defendant did not reach an agreement as to either the amount of "loss" involved and the restitution owed, then by implication, the United States, pursuant to the MVRA, must prove by a preponderance of the evidence to the Court the following: (1) a person is a "victim"; (2) that the "victim" suffered a property "loss"; (3) the amount of the "loss" of the "victim"; (4) persons other than "victims" and how those persons suffered a property loss recognized by the MVRA as the result of Defendant's conduct; and (5) the amount of restitution, if any.

B.    **Legal Frame Work of the MVRA**

Under the MVRA, a person is a "victim" only if it is determined the person incurred a property "loss" as the direct and proximate result of a defendant's offense conduct. A person other than a "victim" must also prove its property "loss" was as the direct and proximate result of Defendant's criminal conduct. The government and Mr. Dodd entered into a limited Stipulation that set forth only that the amounts being claimed and not what Mr. Dodd admitted was owed.

9

(Judge Rambo, N.T. 581, l. 1–7.)  Thus, if a person does not suffer a property "loss" as the direct and proximate result of a defendant's specific conduct which forms the basis for the criminal offense or other conduct, that person is not a "victim," has not suffered a "loss" under the MVRA, and cannot be awarded restitution.  By definition, it is Mr. Dodd's position that the contractors, Metro Bank, and the local agencies are not "victims" under the provisions of MVRA.

The MVRA mandates that defendants who are convicted of or plead guilty to certain property crimes are required to pay restitution to their victims.  See, 18 U.S.C. §3666A(a)(1).  Restitution under the MVRA applies only to offenses against property.  18 U.S.C. §3663A(c)(1)(A)(ii).  Under the MVRA, a defendant must: (1) either return the property damaged during the commission of the crime in question; or (2) if the defendant cannot do so, pay an amount equal to the greater of the value of the property on the date of damage, loss, or destruction; or the value of the property on the date of sentencing, less the value (as of the date the property is returned) of any part of the property is returned."  18 U.S.C. §3663A(b)(1)(B).

Under the MVRA, restitution is allowable "only for the loss caused by the specific conduct that is the basis for the offense of conviction."  Hughey v. United States, 495 U.S. 411, 420 110 S.Ct. 1979 (1990); see also, United States v.

<u>Akande</u>, 200 F. 3d 136, 138 (3rd Cir. 1999) ("the conduct underlying the offense of conviction...stakes out the boundaries of the restitution area authority.")

Under the MVRA, a federal sentencing court is further restricted in that it "shall order" restitution but only if the court finds that an identifiable victim or victims have suffered a property loss as a direct and proximate result of the offense. §§3663A(a)(2), (c)(1)(B). 18 U.S.C. §3663A provides restitution may be ordered to persons other than victims of the offense of conviction "if agreed to by the parties in a plea agreement." See, <u>United States v. Lynch</u>, 345 Fed. Appx. 798, 803, 2009 U.S. App. Lexis 20587, 13 (3rd Cir. 2009).

Persons other than victims, like victims, must prove their loss was directly and proximately caused by a defendant's specific conduct that is the basis for the criminal offense or the defendant's criminal conduct. 18 U.S.C. §3663A(a)(3) and (c)(1)–(3). The contractors, Metro-Bank, and the local governmental agencies are not "victims" as defined by the MVRA as more fully set forth in the Findings of Fact.

C.    **The Contractors, Have Not Suffered a Loss of Property Under the MVRA.**

The contractors, seeking restitution in this case base their claim of "loss" based upon the performance of their Work under the terms of the Construction

Contract. This Court must first determine whether or not each specific contractor has set forth a claim for a loss of property. In order to enter an order for restitution it is axiomatic that a person as the result of a defendant's criminal conduct has been deprived of "property." If not, then it would be improper to enter an order of restitution as a contractor would not have suffered a loss of any property as the result of any criminal conduct on a defendant's part.

In order for the Court to enter an Order of reimbursement under the MVRA for the contractors, it must first find that the contractors seeking restitution had perfected an absolute contractual right to a draw payment under the Construction Contract which that contractor claims it lost as the result of Mr. Dodd's criminal conduct. Each contractor seeking restitution in this case signed a Contract which incorporated the Construction Contract which defined the term Work; conditioned the payment for the contractors' Work; and forbid the Owner to pay the contractors for Work not performed in compliance with the regulatory Buy America and Davis-Bacon Wage provisions of the Construction Contract.

The government contends that Mr. Dodd unlawfully usurped the draw distributions made to CRE and Advance by the County and City pursuant to the Loan Agreements from the Section 108 CDBG Fund for the Work performed by several contractors by using the draw distributions to pay other contractors for

"eligible" work. The government, however, has failed to relate how the contractors' claims were caused by the direct and proximate criminal conduct of Mr. Dodd. Mr. Dodd withheld payment on the contractors' payment applications because he found they had not provided Buy America Act steel mill certificates or Davis-Bacon wage certificates. The contract provided this right to the Owner. (Defendant's Exhibit 2, ¶9.5.1.) The government failed to prove the contractors met the mandatory contractual regulatory conditions precedent to prefect their contractual right to receive payments for Work they performed under the Construction Contract. Thus, there is evidence before the Court to support a finding that the contractors' property interest in the right to be paid had not been perfected and the Owner had no legal obligation under the Construction Contract to pay non-compliant contractors.

The regulatory provisions of the Construction Contract were clear that without the appropriate Davis-Bacon wage certificates or Buy America steel mill certificates, contractors would not be paid for their work. (Defendant's Exhibit 2, §9.5.1 General Contract Conditions and §3.9A and B Regulatory Provisions; Defendant's Exhibit 106, Agenda Item 27, Pre-Construction Conference, 10/23/07). These provisions of the Construction Contract were clearly known to all the contractors who claim to be victims as it was emphasized as Agenda Item

27 at the Pre-Construction Job Site Conference held on October 23, 2007, at which conference each of the contractors had a representative. (Defendant's Exhibit 106, Sign In Sheet.)

The government failed to prove in its case that Mr. Dodd's criminal conduct caused the victims' losses. The government instead had witnesses testify that the manner in which Mr. Dodd administrated the Construction Contract was unreasonable. The government cites Mr. Aldinger for the proposition you do not hold back a whole draw but only that amount equal to the affected work. (U.S. Brief, p. 16.) The government fails to state in projects such as the one in this case, the steel certificates are typically provided by the contractors before work starts. (Aldinger, N.T. 561 l. 3-5.) In this case, many of contractors had not submitted any steel certificates when Mr. Dodd determined to withhold payment. The government more importantly fails to note that it was Mr. Aldinger's, the drafter of the Construction Contract, position that if an owner determined steel certificates were not submitted and steel of questionable origin was found on site, then he would not recommend an owner to pay. (Aldinger, N.T. 568, l. 18-24.) Upon finding Chinese and Polish steel, this is exactly what Mr. Dodd did.

The government also cites Ms. Goodman and Mr. McBride of Herre Brothers, Inc. as sources that retainage is held back to sort out problems at the end

of the project, (U.S. Brief, p. 17-18.) However, none of those witnesses addressed the issue that if at the end of a project, the steel could not be certified to be in accordance with the Buy America provisions of the Construction Contract, how would that matter be addressed. Moreover, both Mr. Goodman and Mr. McBride admitted the retainage would not be sufficient to pull out all of the steel and rebuild the Work. (Goodman, N.T. 657, l. 5-13; and McBride, N.T. 703, l. 1-11.) In fact, Ms. Goodman testified retainage is "more for those punch list items and also getting your final operation manuals and that type of thing." (Goodman, N.T. 658, l 18-20.)

Mr. McBride admitted he would have no idea of the cost to remove all the steel placed by his company into the Project. (McBride, N.T. 704, l. 2-11.) Mr. Dodd made the same point, he withheld payment because he did not know how much of a problem he would face in light of his not having steel mill certificates and the presence of foreign steel on site.

The government argues that Mr. Dodd's defense to payment of contractors was hyper-technical. The government, however, fails to recognize the lenders shut down funding because of mechanics' liens having been filed. (See, Possigner Letter, Government's Exhibit 34, "Project in default because mechanics' liens filed not that contractors had not been paid.") The filing of mechanics' liens by

the contractors and their failure to remove the same was a breach of the Construction Contract. (Defendant's Exhibit 2, ¶13.8.1.) The contractors by the terms of the Construction Contract had recognized the Project was public in nature. (Defendant's Exhibit 2, ¶13.8.1), the entire project was recognized by the County and City as meeting HUD's public benefit requirements of providing jobs and economic development. 24 C.F.R. §570.209(b) and 570.203(a). (Defendant's Exhibit 94.) Projects that have a public purpose, even under the new Mechanic's Lien Act, are exempt. (49 P.S. 1303(b).) Even where a project is privately owned, and the project is more public than private in nature, the provisions of §1303(b) are applicable. Cornerstone Land Development Co. of Pittsburgh, LLC v. Wadwell Corp., __ Pa. Super. __, 959 A.2d 1264 (2005).

The contractors in this case caused their own loss by failing to comply or even attempt to comply with the Regulatory Terms of the Contract. It is disingenuous of the government to state five (5) years after the fact that the Project was not public in nature and Buy America Act provisions were inapplicable. If the law controlling this financing is so convoluted that the United States is now, five (5) years after the fact, disavowing its own agencies' directives that the Buy America Act provisions apply, how can it argue that the direct and proximate harm experienced by the contractors, Metro Bank, and County and City agencies were

caused by Mr. Dodd's criminal conduct in administrating the Contract?

The government has not proven that the contractors' loss was the direct and proximate result of Mr. Dodd's acts. The contractors' loss ultimately that of Metro Bank and the County and City agencies was the direct failure of the contractors to provide steel mill and wage certificates. Contrary to the government's argument, IDC did not received payment in full and payment of IDC did not result in the collapse of this Project as more than $6,000,000.00 in funding remained.

It is Defendant's position he had the duty and obligation to withhold the distribution of draws to contractors who had outstanding wage and steel mill certifications pursuant to ¶9.5 §9.5.1 of the General Contract Conditions and ¶3.9A and C, ¶0805-7 of the Regulatory provisions of the Construction Contract. Defendant contends each contractor who is seeking restitution executed the construction Contract, under the terms of which, as a condition precedent, agreed that they would not be paid for the Work it performed unless it first complied with the provisions of the Davis-Bacon Act (§9.5.1.9) and the more stringent provisions of either the Buy America Act or the Steel Products Procurement Act (§9.5.1.9 and §3.9A and C of the General Regulatory Requirements). The uncontradicted evidence is the 108 funds secured by CRE using the contractors' payment

applications was used to pay other eligible expenses.  (Connor, N.T. 122, l. 13-19.) The federal regulations controlling the expenditure of Section 108 CDBG Funds pursuant to 24 C.F.R. §570.203 only restrict their use by a borrower for the payment of "eligible expenses."  No evidence was introduced by the government that federal regulations limit the expenditure of such funds secured by a Payment Application solely to the payment of the contractor upon whose payment application was secured.  The terms of the Construction Contract do not restrict an owner's receipt of a draw based upon a contractor's payment application to "mirror" payment of that contractor.

It is alleged by the government that CRE's draws from the County and City loans, based upon Payment Applications for Work performed by each contractor, were restricted solely to the payment to that specific contractor's work as represented by the pay application. The government while producing administrators and contractors to testify to this obligation, never presented through those administrators a statue or regulation that required such an obligation.  In fact, Ms Possinger, City of Harrisburg, the "expert" on Section 108 administration could not cite such an example, agreed that while she was not familiar with the terms of the Construction Contract, it did state payment was not to be made to contractors who did not comply with the providing of Buy America steel mill

certificates and was unaware of this provision.  (Possigner, N.T. 191, l 20-25 and 192, l. 1-4.)

It is Defendant's position that CRE had an obligation and duty to withhold distribution of those Section 108 CDBG funds to the contractor until the contractor had complied with the Regulatory provisions of the Construction Contract.  This is exactly what the government's witness Mr. Aldinger, the drafter of the Construction Contract, stated would be his opinion.  (Aldinger , N.T. 568, l. 18-24.)  This ultimately is exactly what Ms. Goodman cautioned Mr. Dodd to do. (Goodman, N.T. 638, l. 7-22 and Defendant's Exhibit 102.)  That is exactly what he was advised to do by the HUD contract administrative officer.  Mr. Dodd's actions were consistent with these positions.  (Defendant's Exhibits 45 and 46.) Ultimately, if it was found that steel incorporated into the Project was not certifiable to meet the Buy America or Steel Procurement provisions of the Construction Contract, it was Mr. Dodd who would be responsible to repay the government for the cost. (Goodman, N.T. 640, l. 3-18.)

### D.    The Contractors are not Victims under the MVRA.

The contractors are not victims under the MVRA as the government failed to prove that their alleged loss was the direct and proximate result of Mr. Dodd's criminal conduct.

The Third Circuit Court of Appeals has interpreted the term "victim" under the "scheme, conspiracy, or pattern of criminal conduct" portion of the Victim Witness Protection Act ("VWPA"), the source statute for the MVRA, in the case of United States v. Kones, 77 F. 3d 66 (3rd Cir. 1996) and concluded it did not include a person who has experienced no harm arising from the criminal conduct that gives rise to the offense of conviction. Id. at 68. The Third Circuit held:

> This [1990 VWPA amendment] expansion of restitution powers, however, is limited by its terms. *Section 3663(a)(2)* is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy, or pattern. Rather, in order for restitution to be permissible, the harm must "directly" result from the "criminal conduct" of the defendant. In this context, we interpret "direct" to require that the harm to the victim be closely related to the scheme, rather than tangentially linked.

> Id. at 70 (emphasis added).

> [Patient] is not a "victim" of [defendant's] mail fraud offenses within the meaning of *§3663(a)*....The conduct that [she] alleges caused her harm is not conduct proscribed by the mail fraud statute. The conduct proscribed by the mail fraud statue is the use of the mails for the purpose of executing a scheme to defraud. Specifically, in this case it is [defendant's] submission of false insurance claims through the mail. [Patient] does not allege that she was injured by the submission of the insurance claims. She alleges that she was injured by faulty medical services. While [patient] alleges that

[defendant's] provision of drugs to her was malpractice and was done in furtherance of his scheme, the provision of drugs, properly or improperly, is not conduct proscribed by the mail fraud statue.

Thus we agree with the district court that "victim" within the meaning of *§3663(a)(1) and (a)(2)* does not include a person who has experienced no harm arising from the criminal conduct that gives rise to the offense of conviction.

*Id.* at 71.

The <u>Kones</u> Court, in rendering its decision, reviewed the legislative history of the VWPA in respect to the portion of the statute which provided a district court may decline to order restitution "to the extent that the court determines that the complication and prolongation of the sentencing process [required to do so] outweighs the need to provide restitution to any victims." (A similar provision is included in the MVRA 18 U.S.C. §3663A(c)(3)(B)). The <u>Kones</u> Court observed the following:

We understand this provision to call for a weighing of the burden of adjudication the restitution issue against the desirability of immediate restitution–or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies.

Nothing in the legislative history evidences an

expectation that a sentencing judge would adjudicate, in the course of the court's sentencing proceeding, <u>all civil claims against a criminal defendant arising from conduct related to the offense</u>. Rather, it was expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence he had heard during the trial of the criminal case or learned in the course of determining whether to accept a plea and what an appropriate sentence would be...<u>The kind of case that Congress had in mind was one in which liability is clear from the information provided by the government and the defendant and all the sentencing court has to do is calculate damages.</u> See <u>id.</u> at 2536-37 (discussing a case where the victim of a purse snatching suffered a broken hip). (Emphasis provided.)

<u>Kones</u>, 77 F. 3d at 68-69 (emphasis in original).

In determining to affirm the district court's decision not to address the victims' malpractice claim, the <u>Kones</u> Court held that to determine the victims' claim would have required the district court to fully litigate the victims' tangentially related civil claim as part of the sentencing process. <u>Id.</u> at 71.

The Conference Committee report in explaining the 1996 enactment of the MVRA, explained the test of causation under the Act and emphasized:

> In all cases, it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution. The committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to

mandatory restitution. S. Rep. No. 104-179, at 19 (1996),
1996 U.S.C.A.N. 924, 932.

Further, courts ordering restitution under the MVRA are limited to remedying the actual loss caused by the defendant's "offense conviction." Hughey v. United States, 495 U.S. 411, 413, 110 S. Ct. 179 (1990) cited in Singh v. Attorney General of the United States, 677 F. 3d 503, 512-13 (3rd Cir. 2012).

Where the conviction is the result of a plea agreement, the court is to "look to the plea agreement and the colloquy" to determine the "offense of conviction." United States v. Lynch, 345 Fed. Appx. 798, 803, 209 U.S. App. Lexis 2005 87, 11-12 (3rd Cir. 2009) citing United States v. Akande, 200 F. 3d at 142.

While judges may use any information they possess to enhance a sentence, however, "restitution is a special case, because the statutes limit the losses [to those] caused by the offense of conviction," United States v. Akande, 200 F. 3d at 143.

The Third Circuit in United States v. Akande, 200 F.3d 136 (3rd Cir. 1999) addressed the meaning of "offense" for purposes of determining the scope of criminal conduct encompassed within MVRA's definition of "victim." The plea agreement in the Akande case specified restitution would be ordered at sentencing, but it did not mention any particular transaction, victim, or date. The Akande

court recited the principles set out in the <u>Kones</u> decision including that "[t]he victim's harm must be closely connected to the conspiracy or scheme rather than tangentially." <u>Id</u>. at 139. The <u>Akande</u> court addressed the 1990 amendments to VWPA that had expanded the definition of "victim" and held: "Congress did not want sentencing to become a forum for determination of issues better suited to civil proceedings." <u>Id.</u> at 141.

The terms "directly and proximately harmed," as used in the MVRA were further interpreted by the Third Circuit Court of Appeals in the case of <u>United States v. Fallon</u>, 470 F. 3d 542 (3rd Cir. 2005). The <u>Fallon</u> court held that the test of causation (direct and proximate) under the MVRA is as follows:

> By the statute's explicit terms, loss can only be paid to victims who are "directly and proximately harmed."
>
> Thus, this court, as well as others, has repeatedly recognized that under the MVRA, "restitution must be ...'based on *losses directly resulting* from [the defendant's criminal] conduct".... The First Circuit has adopted the following two-prong test:
>
> First: Restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct....
>
> Second: Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of

conviction is too far removed, either factually or
temporally, from the loss.

*Id. at 548-49* (internal citations omitted) (citing with
approval *United States v. Vaknin*, 112 F. 3d 579,589 (1st
Cir. 1997) (emphasis in the original).

The *Vaknin* court set forth the following causative standard:

[W]e hold that a modified but for standard of causation is
appropriate for restitution under the VWPA.  This
means, in effect, that the government must show not only
that a particular loss would not have occurred but for the
conduct underlying the offense of conviction, but also
that the causal nexus between the conduct and the loss is
not too attenuated (either factually or temporally).  The
watchword is reasonableness.  A sentencing court should
undertake an individualized inquiry; what constitutes
sufficient causation can only be determined case by case,
in a fact-specific probe.

*Vaknin*, 112 F. 3d at 589-90.

The lesson of the *Fallon* case is that the term "directly and proximately

harmed" serves a two-fold purpose as used in the MVRA:  (1) it defines who

qualifies as a "victim" under the statue; and (2) it provides a rule for determining

what losses may be claimed as restitution (i.e., only those losses "directly and

proximately caused by defendant's criminal conduct).

The Third Circuit in *Fallon* rejected the government's absolute but for

argument and held that it is improper for a district court under the MVRA to enter

an award of restitution award where a defendant presents sufficient evidence to rebut certain inferences and the government fails to: (1) present evidence to overcome the defendant's rebuttal; or (2) presents evidence that a victim's alleged losses are directly and proximately related to the criminal conduct. <u>Id</u>. at 549. The Court of Appeals held to accept the government's argument would foreclose any consideration of the reasons for Fallon's allegations of the reason for the loss or contractual defenses to the claims for loss which could be for reasons completely unrelated to Fallon's criminal conduct.

In reversing the district court, the <u>Fallon</u> court held that under the MVRA that "restitution must be...'based upon losses directly resulting from [the defendant's criminal] conduct.'" <u>Id</u>. at 548, citing <u>U.S. v. Quillen</u>, 335 F. 3d 219, 222 (3rd Cir. 2003). The <u>Fallon</u> court cited with approval the concept of causation (but for) as expressed <u>United States v. Vaknin</u>, 112 F. 3d 579,589 (1st Cir. 1997).

In <u>Vaknin</u>, the First Circuit Court of Appeals had concluded that neither "but for" [in the sense of being an event preceding the later events leading to the loss] nor "direct" [in the sense of being the event immediately before the loss] causation would satisfy the VWPA then in effect. The Third Circuit in <u>Fallon</u> in 2005 adopted the causation definition as expressed by the <u>Vaknin</u> court in the pre-1990 version of the VWPA and applied it to interpreting the 1996 versions of

VWPA and MVRA.

This Court does not have before it all of the issues that would be developed in a civil action. Instead, this Court has various snippets of information that if fully expanded upon would lead the Court to a better understanding as to who breached the contract and what damages as between the parties should be assessed. At this point, it is respectfully proposed that this is not the type of case that the provisions of the MVRA were envisioned to address.

> E. **The Losses the Contractors, Metro Bank, and Local Governmental Agencies are Alleging are Not Recognized by the MVRA as a Loss of Property.**

The Third Circuit Court of Appeals has interpreted the term "property" as set forth in §3663(b)(1) (VWPA), does not include consequential or incidental damages. See, <u>Government of the Virgin Island v. Davis</u>, 31 D.I. 332, 43rd F. 3d 41 (3rd Cir. 1994). In <u>Davis</u>, the defendant, who pleaded guilty in federal district court, was ordered to pay restitution equal in the amount of the legal fees incurred by the victim to recover property fraudulently obtained by the defendant. In reviewing the district court's restitution order, the <u>Davis</u> Court, reviewed the District Court and highlighted the controlling statutory language of the then VWPA and concluded that §3663(b)(1) of the VWPA expressly limited restitution to the value of the property that has been damaged, lost, or destroyed as a direct result of the criminal acts in question. The <u>Davis</u> court held that "restitution under

the VWPA cannot include consequential damages." <u>Government of the Virginia Island v. Davis</u>, Id. at 46.  The <u>Davis</u> Court found that consequential damages, such as attorney's fees, are not recoverable as restitution under §3663(b)(1) of the VWPA.  <u>Davis</u>, Id. at 46, cited by <u>United States v. Simmonds</u>, 235 F. 3d 826, 833 (3rd Cir. 2000).

The language of §3663(b)(1) (the VWPA) and §3663A(b)(1) (the MVRA) is identical in all relevant respects.  Therefore, absent a unique and highly persuasive MVRA legislative history, of which there is none, the Third Circuit Court of Appeals has interpreted the language of the §3663(b)(1) (the VWPA) control the interpretation of §3663A(b)(1) in this case.  See, <u>United States v. Simmonds</u>, 235 F. 3d 826, 831 (n. 2) (3rd Cir. 2000).  In <u>Simmonds</u>, the Third Circuit ruled that counsel fees, being a consequential loss, is not recoverable under the MVRA.  <u>Id.</u> at 833.

Along the same lines, contractors' claims for counsel fees, Work performed by not approved, Work not performed due to shut down of the Project, Work not paid for due to acts of other contractors, lost profits, amortized interest costs, or interest costs are all either incidental to or consequential in nature and not recoverable under the MVRA.

The government by stipulation produced evidence of the contractors' invoices representing the total contract price including profit, or, in the alternative,

included invoices for Work either not approved or not completed, such losses do not fall within the meaning of loss as such claims are incidental, consequential, and speculative. While those might be defined as damages in a civil proceeding, they are not reimbursable under the provisions of MVRA.

Further, only the actual losses incurred by Metro Bank are recoverable and do not include the interest lost on the loan or the costs of securing the property as these types of losses are incidental and consequential. Moreover, the "loss" of Metro Bank is secured by its mortgage on which it has yet to foreclose. Therefore, there is no idea as to ultimate amount that might be due to Metro Bank.

As concerns the local agencies, again, if the Court finds a loss occurred, only the monies lent and distributed to CRE are recoverable under the terms of the MVRA. Not the amortized cost of the funding. The City of Harrisburg only advanced $1,572,845.32 in Section 108 funds (Government Exhibit 33), not the amortized cost of the money as set forth in the exhibit to the Stipulation at $6,162,255.62. The County, which lent CRE similar amounts of money, set its loss at only $2,752,450.64 which represents the money lent to CRE, not the amortized cost of the money. The local agencies are under a duty, just as is every claimant, to remediate their losses by paying back to HUD any and all sums not spent on the Project. Moreover, the County and City loans are secured by a mortgage against the Project which has yet to be foreclosed upon. All such costs are again incidental and consequential and not recoverable under the MVRA.

III.  **CONCLUSION**

In the end, the government advises the Court it has to decide as between the witnesses who is credible and who is not in this matter.  It is suggested that very little of Mr. Dodd's case is solely based upon his testimony but, instead, is based upon objective demonstrable written evidence  as set forth in the exhibits.  Those objective facts support a finding that claimants' harm and losses were not as a direct and proximate result of Mr. Dodd's specific criminal offense or the conduct for which he was indicted.  As a whole, the government has not proven this Project collapsed because of Mr. Dodd's specific criminal conduct or by the criminal conduct recited in the indictments.  Regrettably, the Project collapsed because certain contractors took actions that were not warranted or provided for under the terms of the Construction Contract.  These actions directly and proximately lead to the City's and County's declaration of default.  In retrospect, in this criminal sentencing, there could have been different actions taken to secure contractor compliance with Buy America and Davis-Bacon certifications, but that failure, however, does not render Mr. Dodd to restitution under the MVRA.

Respectfully submitted,

CUNNINGHAM & CHERNICOFF, P.C.

Date: June 24, 2013          By:     /s/ Jordan D. Cunningham
                                     Jordan D. Cunningham, Esquire
                                     PA Supreme Court I.D. No. 23144
                                     P.O. Box 60457
                                     Harrisburg, PA  17106-0457
                                     Telephone:  717-238-6570

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NOS. 1:CR-10-183 |
| | ) and 1:CR-11-003 |
| v. | ) (Judge Rambo) |
| | ) |
| DAVID RICHARD DODD, II | ) |
| | ) ELECTRONICALLY FILED |

### CERTIFICATE OF SERVICE

I do hereby state that on the **24**[th] day of **June 2012**, I served a true and correct copy of the foregoing in the above captioned matter, by electronic mail or by placing the same in the United States mail, first-class, postage prepaid, in Harrisburg, Pennsylvania, as follows:

William A. Behe
Assistant U.S. Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
Email:  william.behe@usdoj.gov

/s/ Angela L. Hewitt
Angela L. Hewitt
Legal Assistant

F:\Home\AHEWITT\DOCS\D-F\DODD, DAVID\PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW\2  BRIEF final 062413.wpd